## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANGELA GEORGE AUSTIN** | : | |
| 240 West Hansberry Street | : | |
| Philadelphia, PA 19144 | : | CIVIL ACTION NO.: |
| | : | |
| v. | : | |
| | : | |
| **BENSALEM TOWNSHIP** | : | |
| 2400 Byberry Road | : | |
| Bensalem, PA 19020 | : | |
| | : | |
| and | : | |
| | : | |
| **WILLIAM CMOREY** | **:** | |
| In his official and individual capacity | : | |
| 2400 Byberry Road | : | |
| Bensalem, PA19020 | : | |
| | : | |
| and | : | |
| | : | |
| **FRED HARRAN** | **:** | |
| In his official and individual capacity | : | |
| 2400 Byberry Road | : | |
| Bensalem, PA 19020 | : | |
| | : | |
| and | : | |
| | : | |
| **POLICE SERGEANT BARRY** | **:** | |
| In his official and individual capacity | : | |
| 2400 Byberry Road | : | |
| Bensalem, PA 19020 | : | |
| | : | |
| and | : | |
| | : | |
| **POLICE OFFICER DAVID CLEE** | **:** | |
| In his official and individual capacity | : | |
| 2400 Byberry Road | : | JURY TRIAL DEMANDED |
| Bensalem, PA 19020 | : | |
| | : | |
| and | : | |
| | : | |

**POLICE OFFICER JACKSON**                     :
In his official and individual capacity         :
2400 Byberry Road                               :
Bensalem, PA 19020                              :
                                                :
            and                                 :
                                                :
                                                **:**
**POLICE OFFICER  KARLEY**                     **:**
In his official and individual capacity         :
2400 Byberry Road                               :
Bensalem, PA 19020                              :
                                                :
            and                                 :
                                                :
**DETECTIVE JOHN DOE**                          :
In his official and individual capacity         :
2400 Byberry Road                               :
Bensalem, PA 19020

# COMPLAINT

Plaintiff, Angela George Austin, by and through her attorney, Julia Morrow, Esquire, hereby files this Complaint as follows:

## PARTIES

1.      Plaintiff, Angela George Austin ("Plaintiff"), is an adult citizen of the Commonwealth of Pennsylvania, age 41, residing at 240 West Hansberry Street, Philadelphia, PA 19144.  Plaintiff has no criminal history, earned her L.P.N. degree from James Martin School of Nursing, and has been, for the past ten years, gainfully employed as a Licensed Practical Nurse.

2.      Defendant Bensalem Township ("Defendant Bensalem Township"), a second class township, is a municipality of Bucks County, Commonwealth of Pennsylvania, with its municipal headquarters located at 2400 Byberry Road, Bensalem,

PA 19020, who, at all times relevant, pertinent and material hereto, was the employer of Defendants William Cmorey ("Defendant Cmorey"), Fred Harran ("Defendant Harran"), Police Sergeant Barry ("Defendant Sergeant Barry"), Police Officer David Clee ("Defendant Officer Clee"), Police Officer Jackson ("Defendant Officer Jackson"), Police Officer Karley ("Defendant Officer Karley") (collectively, "Defendant officers"), and Detective John Doe (Defendant Detective Doe").

3.     Defendant Cmorey is an adult citizen of the Commonwealth of Pennsylvania who, upon information and belief, is an appointed public official of Defendant Bensalem Township, to wit, Director of Administration, who, in that capacity, inter alia, and at all times relevant, pertinent and material hereto, was responsible for administering all issues related to Defendant Bensalem Township's personnel, as well as ensuring compliance with all policies, rules and regulations of Defendant Bensalem Township.  Defendant Cmorey further is responsible for overseeing the hiring, firing, and disciplining of all Defendant Bensalem Township personnel.

4.     Defendant Harran is an adult citizen of the Commonwealth of Pennsylvania who is an appointed public official of Defendant Bensalem Township, to wit, Director of Public Safety, who, inter alia, and at all times relevant, pertinent and material hereto, and in conjunction with Defendant Cmorey, was responsible for the administering, directing and managing of all affairs and policy of the Bensalem Township Police Department ("Bensalem Police Department"), and for supervising its members.

5.     Defendant Sergeant Barry is an adult citizen of the Commonwealth of Pennsylvania who is an employee of Defendant Bensalem Township, assigned to duty at

the Bensalem Police Department, and who, at all times relevant, pertinent and material hereto, was, _inter alia,_ responsible for the supervision and control of Defendants Officer Clee, Officer Jackson, Officer Karley and Detective Doe, and was acting within the course and scope of his duties as an employee/agent of Defendant Bensalem Township.

6. Defendant Officer Clee is an adult citizen of the Commonwealth of Pennsylvania who is an employee of Defendant Bensalem Township, assigned to duty at the Bensalem Police Department and who, at all times relevant, pertinent and material hereto, was acting within the course and scope of his duties as an employee/agent of Defendant Bensalem Township.

7. Defendant Officer Jackson is an adult citizen of the Commonwealth of Pennsylvania who is an employee of Defendant Bensalem Township, assigned to duty at the Bensalem Police Department and who, at all times relevant, pertinent and material hereto, was acting within the course and scope of his duties as an employee/agent of Defendant Bensalem Township.

8. Defendant Officer Karley is an adult citizen of the Commonwealth of Pennsylvania who is an employee of Defendant Bensalem Township, assigned to duty at the Bensalem Police Department and who, at all times relevant, pertinent and material hereto, was acting within the course and scope of his duties as an employee/agent of Defendant Bensalem Township.

9. Defendant Detective Doe is an adult citizen of the Commonwealth of Pennsylvania who is an employee of Defendant Bensalem Township, assigned to duty at the Bensalem Police Department and who, at all times relevant, pertinent and material

hereto, was acting within the course and scope of his duties as an employee/agent of Defendant Bensalem Township.


## JURISDICTION AND VENUE

10.     This Court has jurisdiction over Plaintiff's Complaint because it involves a federal question with supplemental claims, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1367 (a).

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1).


## FACTUAL BACKGROUND

12.     On or about April 27, 2006, Plaintiff and her fiancée,  John Austin ("Mr. Austin", were paying guests at the Neshaminy Inn, unit #112, located at 2345 Old Lincoln Highway in  Feasterville Trevose, PA 19053 ("unit #112" or "motel").

13.     Plaintiff is African American.  Mr. Austin is Caucasian.

14.     At approximately 6:15 a.m., responding to a report of a domestic disturbance, Defendant Officer Karley and Defendant Officer Jackson appeared outside of unit #112.

15.     Defendant Officer Karley had only recently been hired by Defendant Bensalem Township, and his status was that of "trainee."

16.     Plaintiff was standing outside of unit #112 when Defendant Officer Karley and Defendant Officer Jackson arrived.  The door to unit #112 was closed.

17.     Plaintiff had no visible signs of injury, and otherwise appeared relatively calm.

18.    Plaintiff spoke with Defendant Officers Karley and Jackson when they arrived.

19.    Plaintiff advised that she was the one who had called the police, represented that she was unharmed, and assured Defendant Officers Karley and Jackson that the situation had resolved.

20.    Defendant Officers Karley and Jackson questioned Plaintiff about the other party involved in the reported disturbance, Mr. Austin.

21.    Plaintiff informed Defendant Officers Karley and Jackson that Mr. Austin was inside of unit #112.

22.    Defendant Officer Karley then began to knock at the door to unit #112 with his nightstick.

23.    At some point while Defendant Officer Karley was knocking, Defendants Officer Clee and Sergeant Barry joined Defendants Officer Karley and Jackson at the motel.

24.    After an alleged period of five minutes, Mr. Austin opened the door to unit #112.

25.    During this five minute period, none of the Defendant officers made any attempt to gain entry to unit #112 by force.

26.    Instead, and despite their alleged need to investigate the matter further, the Defendant officers patiently waited until the door to unit #112 was answered.

27.    When Mr. Austin eventually opened the door, he appeared uninjured, and recently roused from slumber.

28.     The Defendant officers began to question Mr. Austin about the disturbance, at which time Mr. Austin advised them that he was unharmed and the problem had resolved.

29.     At that point, and despite having confirmed with both parties concerned that the "disturbance" had abated, the Defendant officers requested to search unit #112. Mr. Austin refused.

30.     The Defendant officers entered unit #112 anyway, and began a thorough search, which included that of closed drawers.

31.     Plaintiff and Mr. Austin were seated on the beds in unit #112 while the search was underway.

32.     Ultimately, Defendant Officer Clee found a gym style bag, which was zipped closed.

33.     Defendant Officer Clee decided to open the bag, and therein found approximately one pound of marijuana, wrapped up inside of several plastic bags, along with several new and unused plastic baggies.

34.     At that point, the Defendant officers prepared Plaintiff and Mr. Austin for arrest.

35.     Plaintiff was patted down and searched by the Defendant officers, all of whom were men, and was taunted by Defendant Officer Jackson.

36.     Specifically, and as Plaintiff was being placed into custody, Defendant Officer Jackson repeatedly shouted in her face, "are you scared now?"

37.     Plaintiff, standing five foot three inches tall, and weighing approximately 135 pounds, was handcuffed behind her back.

38.   Plaintiff began to feel ill, advised the Defendant officers of same, and requested that she be taken to the hospital.

39.   Defendant Officer Clee attempted to dissuade Plaintiff from such a course of action, warning that if she insisted on being taken to the hospital, she would, immediately thereafter, be brought back to the Bensalem Police Department Station House ("Station House") where she would be criminally charged and jailed.

40.   Fearful of Defendant Officer Clee's warning, and believing, based thereon, that she would quickly be released, Plaintiff withdrew her request to be hospitalized.

41.   Defendant Officers Karley and Jackson then each took one of Plaintiff's arms, and, with all three abreast, began to escort Plaintiff from unit #112 to the patrol car.

42.   When Defendant Officers Karley and Jackson exited unit #112 with Plaintiff, they were walking at a brisk pace with which Plaintiff could not keep up.

43.   Plaintiff requested that Defendant Officers Karley and Jackson slow down, but Plaintiff was ignored.

44.   Once outside on a concrete surface, Plaintiff lost her balance, stumbled and fell face first onto the ground.

45.   Immediately upon falling, Plaintiff heard Defendant Officer Jackson say something to the effect of, "I am not ready for this shit, nigger."

46.   In a rapid, single motion, Defendant Officers Karley and Jackson then picked Plaintiff up from the ground, and spun her around.

47.   In the process, Plaintiff heard a clicking sound and felt immediate pain in her right ankle.

48.     For unknown reasons, Defendant Officers Karley and Jackson then proceeded to walk Plaintiff, who, at that point, was limping and moaning in pain, back to unit #112.

49.     Once back inside of unit #112, Plaintiff was propelled with force onto one of the beds.

50.     Plaintiff looked at her ankle and noticed marked swelling.

51.     Plaintiff, now crying and grimacing from the pain, advised the Defendant officers in unit #112 that her right ankle was hurting and swollen.

52.     Defendant Officers Karley and Jackson looked at the right ankle, at which time Defendant Officer Karley remarked, "she's faking it."

53.     After approximately five to ten minutes, Plaintiff was again escorted in the same fashion by the same Defendant officers to a patrol car waiting in the parking lot.

54.     Although there was an ambulance parked outside, Defendant Officer Clee continued to warn Plaintiff of the consequences of being transported to the hospital, as opposed to the Station House for quick processing.

55.     Defendant Officer Karley then transported Plaintiff to the Station House in his patrol car.

56.     Plaintiff cried throughout the journey to the Station House, and continued to cry once at the Station House.

57.     In fact, and at that point, Plaintiff's right ankle had swollen to such a degree that she could no longer walk, and had to literally crawl down the hallway to the holding cell.

58.     While Plaintiff was crying and crawling to the holding cell, she heard an unidentified Defendant Bensalem Township police officer say, "let her crawl to her cell…nigger."

59.     Plaintiff was then placed into a holding cell for a couple of hours, after which she was taken to Defendant Detective Doe for processing.  Plaintiff does not recall the name of the detective.

60.     Plaintiff, a Licensed Practical Nurse, noticed at that time that her right ankle had swollen to three times its normal size, and a portion of the ankle bone was severely protruding.

61.     Plaintiff showed her right ankle to Defendant Detective Doe, who simply shook his head.

62.     Plaintiff was then told that she would not be charged with any crime, and she and Mr. Austin (who had been charged) were released.

63.     Plaintiff, unfamiliar with Bensalem, and without any means of transportation, asked an unidentified police officer at the front desk whether someone could give her a ride.

64.     Another identified Bensalem police officer replied, "tell her to take the bus."

65.     Plaintiff and Mr. Austin then went outside of the Station House, where they waited in plain view of any and all personnel in the Station House, for several hours.

66.     While outside of the Station House, Plaintiff and Mr. Austin were attempting to contact Plaintiff's mother for transportation, but to no avail.

67.     All the while, the condition of Plaintiff's right ankle continued to worsen.

68.     Ultimately, an unidentified Bensalem police officer drove Plaintiff and Mr. Austin back to the motel, at which time Mr. Austin flagged down an ambulance.

69.     The ambulance transported Plaintiff to the emergency room at Frankford Torresdale Hospital in Philadelphia, Pennsylvania, at which time it was discovered that plaintiff's right ankle was broken in three places.

70.     On or around October 18, 2006, approximately six months after Plaintiff's arrest, Defendant Officers Karley and Jackson swore out an Affidavit of Probable Cause ("Affidavit") in connection with the events at the motel, and charged Plaintiff with violations of the Controlled Substance Act of 1972.  Attached hereto and marked as Exhibit "A" is a true and correct copy of the Affidavit.

71.     On or about April 11, 2007, and in connection with the aforementioned criminal charges, Plaintiff was accepted into the Accelerated Rehabilitative Disposition Program ("ARD") by the Bucks County District Attorney's Office.

72.     As a result of this incident, Plaintiff underwent surgery during which three screws, a metal plate and wiring were inserted into her right ankle.

73.     Plaintiff's ankle was then sutured and placed into a cast, and she was thereafter required to return for follow-up treatment every two to four weeks during which her dressing was changed, and her ankle re-cast.

74.     Plaintiff was forced to undergo other medical procedures as well, because her ankle was not healing properly.

75.     Plaintiff wore the cast for approximately six months during which time she required crutches to ambulate.

76.     At the time of this incident, Plaintiff was employed on a full time basis, and typically worked overtime, as a Licensed Practical Nurse.

77.     As a result of the injury to Plaintiff's right ankle, Plaintiff could no longer meet the physical demands of her employment as a Licensed Practical Nurse.

78.     Plaintiff therefore lost her job, and was forced to seek public assistance to support herself and to pay her medical expenses.

79.     In or around September of 2006, after having been in a cast for approximately six months, the cast was removed, and Plaintiff returned to work.

80.     Plaintiff will require further surgery in the near future, and suffers chronic pain in the right ankle.  The ankle is still sore to the touch, and must be wrapped daily in an Ace bandage.

81.     Plaintiff can no longer jog, has difficulty driving, has difficulty putting on and removing her shoes, is limited in her activities with her young son, and is limited in her footwear.

82.     As a result, and although Plaintiff was able to return to work in September of 2006, it is only on a part-time basis.

83.     As such, Plaintiff's earning capacity and income have been reduced by at least 50% as compared to that before the incident.

84.     Additionally, and as a further result of this incident, Plaintiff has suffered and will continue to suffer mental anguish, humiliation, anxiety, depression, sleep and appetite disturbances.

## COUNT I
### Civil Rights Violations – 42 U.S.C. § 1983, et seq.
### Plaintiff v. All Defendants

85.    Plaintiff hereby incorporates paragraphs 1 through 83 as though set forth in full.

86.    Defendant Officers Karley and Jackson utilized force in the arrest of Plaintiff, to wit, guiding Plaintiff along a concrete walkway in a manner which was certain to lead to her loss of balance, and thereafter twisting and jerking her body in such a fashion as to cause a violent and severe break of her right ankle bone.

87.    The use of force employed by Defendant Officers Karley and Jackson to effectuate the arrest of Plaintiff was unreasonable, excessive and intentional in that Plaintiff was a petite female, who was not resisting, and who posed no physical threat and/or risk of flight, and who was already handcuffed after being arrested for a non-violent offense.

88.    Defendant Officer Karley violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by utilizing unreasonable, excessive force to effect the arrest of Plaintiff.

89.    Defendant Officer Jackson violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by utilizing unreasonable, excessive force to effect the arrest of Plaintiff.

90.    Defendant Officer Clee was present and, upon information and belief, witnessed Defendant Officers Karley and Jackson's unreasonable use of excessive force upon Plaintiff, or, at the very least, had actual knowledge of same, yet failed to take any action, which was within his power, to prevent same.

91.     Defendant Officer Clee violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to prevent or attempt to prevent the unreasonable, excessive force that was visited upon Plaintiff by his brother officers, Defendant Officers Karley and Jackson.

92.     Defendant Sergeant Barry, as the supervisor of Defendant Officers Karley, Jackson and Clee, bore witness to or, at the very least, had actual knowledge of the unreasonable excessive force that Defendant Officers Karley and Jackson used on Plaintiff and, by failing to take any remedial action in connection therewith, acquiesced to his subordinates' unreasonable use of excessive force.

93.     Defendant Sergeant Barry violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to prevent or attempt to prevent the unreasonable, excessive force that was visited upon Plaintiff by his subordinates, Defendant Officers Karley and Jackson.

94.     Defendant Sergeant Barry violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by, despite having actual knowledge of his subordinates' unreasonable, excessive use of force upon Plaintiff, acquiescing to same.

95.     Immediately after Defendant Officers Karley and Jackson utilized unreasonable, excessive force while effecting the arrest of Plaintiff, Plaintiff's ankle began to swell.

96.     Plaintiff, while still at the motel, brought her medical condition to the attention of the Defendant officers.

97.     Plaintiff continued to complain about her ankle as her condition worsened, while on the way to the Station House and during her entire stay at the Station House.

98.     Plaintiff further brought the worsening condition of her ankle to the attention of Defendant Detective Doe while at the Station House.

99.     Notwithstanding her swelling ankle and inability to ambulate properly, the Defendant officers and Defendant Detective Doe ignored and, indeed, mocked Plaintiff's need for medical attention, twice called her a "nigger," and allowed her to first languish in a holding cell, and then out front of the Station House for hours without medical treatment.

100.    Plaintiff's condition gave rise to a serious medical need which the Defendant officers and Defendant Detective Doe displayed deliberate indifference toward.

101.    Defendant Officer Karley violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to provide adequate medical attention to Plaintiff.

102.    Defendant Officer Jackson violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to provide adequate medical attention to Plaintiff.

103.    Defendant Officer Clee violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to provide adequate medical attention to Plaintiff.

104.     Defendant Sergeant Barry violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to provide adequate medical attention to Plaintiff.

105.     Defendant Detective Doe violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by failing to provide adequate medical attention to Plaintiff.

106.     Defendants Bensalem Township, Cmorey and Harran violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution based on the following:

> (a) By establishing a "policy, pattern and practice" of encouraging and/or failing to correct the routine practices of its police officers using excessive force during arrests and/or pursuits; and
>
> (b) By breaching their "affirmative duty" to Plaintiff, after the police officers inflicted injury upon her, to provide Plaintiff with adequate medical attention.

**(a) Pattern and Practice**

107.     Since at least 1990, Defendant Bensalem Township, its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran, as well as other agents and employees, have fostered and promoted an atmosphere within the Bensalem Police Department in which the use of excessive force,  violence and racial discrimination by the police is considered acceptable practice.

108.    This unlawful practice proximately caused the violation of Plaintiff's civil rights set forth above.

109.    Further, since at least 1990, Defendant Bensalem Township, its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran, have also promoted a pattern of unlawful conduct by permitting its officers to routinely go unpunished for using excessive force on the subjects during arrest.  This policy has encouraged officers to use excessive force during arrests and pursuits.

110.    Since 1990, several citizens of the Commonwealth of Pennsylvania have been injured by members of the Bensalem Police Department, in particular Defendant Officer Clee, using excessive force during arrests and pursuits.

111.    These members of the Bensalem Police Department were encouraged to engage in this behavior because of the atmosphere promoted by Defendant Bensalem Township, its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran, which routinely allowed such conduct to go unpunished and/or unchecked.

112.    Despite the number of meritorious claims filed against Defendant Bensalem Township for police misconduct and civil rights violations on the part of members of the Bensalem Police Department, Defendant Bensalem Township, through its agents and employees, including Defendant Cmorey and Defendant Harran, have been "deliberately indifferent" to the rights of citizens and have failed to take any sufficient remedial action to change the pattern/custom of allowing and promoting the use of excessive force by police during arrests.

113.    Specifically, Defendant Bensalem Township, its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran,  have failed to correct this problem of which they have been aware, through adequate screening of applicants and current officers, psychological testing of officers against whom complaints were filed, and/or on the job training and supervision of said officers.

114.    Defendant Bensalem Township, its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran, have further failed to provide additional instruction/training to its officers so as to reverse the pattern they have promoted relating to police using unreasonable, excessive force during the last ten years.

115.    Defendant Bensalem Township, presumably equipped with an internal system for investigating citizen complaints of police misconduct, has, through its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran, routinely failed to reprimand, re-train, evaluate and/or properly supervise those officers who were the subject of citizen complaints of violence and/or civil lawsuits.

116.    Because no adverse action is typically taken against such rogue officers, members of the Bensalem Police Department are encouraged by Defendants Bensalem Township, Cmorey and Harran to continue to be racially discriminatory, and to use unreasonable, excessive force during arrests and pursuits.

117.    As a result, Defendants Bensalem Township, Cmorey and Harran have promoted an atmosphere where its officers feel they are "above the law," and that complaints of police misconduct will be ignored.

118.    Demonstrative of Defendants Bensalem Township, Cmorey and Harran's knowledge of and acquiescence to misconduct and the use of unreasonable, excessive force by members of the Bensalem Police Department, in particular, Defendant Officer Clee, are the following cases filed in the Eastern District of Pennsylvania:  Geonnotti v. Barry, et. al., 1990 WL 200703 (E.D. Pa.); Schwab v. Tegnez, et. al., 1991 WL 46449 (E.D. Pa.); Schwendiman v. Clee, et. al., 1998 WL 321242 (E.D. Pa.); DiPasquale v. Bensalem Township, et. al., No. 01-075 Memorandum and Order, Fullam, Sr. J. November 2001; Naeem v. Bensalem Township, et.al., 2005 WL 696763 (E.D. Pa.); and Faust v. Clee, et. al., 2006 WL 3025960 (E.D. Pa.).

119.    The conduct in the above cited civil actions filed in the Eastern District of Pennsylvania has not been adequately addressed, and/or remedied, as it continues, even by the very same police officers (Defendant Officer Clee), unabated.

120.    This further demonstrates Defendant Bensalem Township's, its Directors of Administration, including Defendant Cmorey, and its Directors of Public Safety, including Defendant Harran, deliberate indifference to the rights of citizens taken into custody by members of the Bensalem Police Department.

121.    Defendants Bensalem Township, Cmorey and Harran failed to properly evaluate, supervise, screen, train and/or re-train members of the Bensalem Police Department, especially Defendant Officer Clee, despite being on actual notice that use of

excessive force, and other inappropriately overzealous actions, by members of the Bensalem Police Department, was occurring on a regular basis.

122.    This malfeasance on the part of Defendants Bensalem Township, Cmorey and Harran was a proximate cause of Plaintiff's injuries set forth above.

**(b) Breach of Affirmative Duty**

123.    After having utilized unreasonable, excessive force while arresting Plaintiff, and thereafter taking Plaintiff into custody, all defendants had an affirmative duty not to deprive Plaintiff of her constitutional rights.

124.    All defendants maliciously breached this duty, which proximately caused Plaintiff to sustain serious injury, by allowing members of the Bensalem Police Department, who were inadequately trained, screened, tested or otherwise properly controlled, to take Plaintiff into custody and detain her.

125.    Plaintiff was clearly in need of prompt medical attention.

126.    Defendant Bensalem Township, Cmorey and Harran placed Plaintiff in a position of grave danger when it allowed the Defendant officers to break Plaintiff's ankle through the use of unreasonable, excessive force, and to thereafter ignore Plaintiff's worsening medical condition, while mocking and ridiculing her, and to, ultimately, allow her to remain outside of the Station House with her unattended, severe medical condition, for several hours.

127.    As a result, Defendant Bensalem Township, Cmorey and Harran breached it's "affirmative duty" to protect Plaintiff after she was placed into custody.

128.    Defendants Bensalem Township, Cmorey and Harran subjected Plaintiff to these deprivations of constitutional rights unreasonably, and with reckless disregard as

to whether members of the Bensalem Police Department would violate her rights in the manner in which they did.

129.    Defendants Bensalem Township, Cmorey and Harran therefore violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution by fostering and acquiescing in a pattern and practice of members of the Bensalem Police Department violating the civil rights of citizens; and breaching an "affirmative duty" to Plaintiff to ensure that she would be provided with adequate medical treatment while in the custody of members of the Bensalem Police Department.

130.    As a direct and proximate result of the acts and omissions of all defendants as set forth above, Plaintiff suffered serious injury, was forced to endure great pain and mental suffering, and was deprived of important, inalienable rights, all to the detriment of Plaintiff.

WHEREFORE, Plaintiff, Angela George Austin, hereby demands judgment in her favor and against all defendants in an amount in excess of $150,000.00 for compensatory damages, punitive damages, attorney's fees, interest, fines and costs.

## COUNT II
### Conspiracy to Commit Civil Rights Violations – 42 U.S.C. § 1983, et seq.
### Plaintiff v. All Defendants

131.    Plaintiff hereby incorporates paragraphs 1 through 129 as though set forth in full.

132.    Upon information and belief, the Defendant officers named herein visited unreasonable and excessive violence upon Plaintiff, and thereafter, along with Defendant Detective Doe, denied her medical treatment, because of, *inter alia*, her race.

133.    Upon information and belief, the Defendant officers assaulted Plaintiff because Defendants Bensalem Township, Cmorey and Harran encouraged them, through acquiescence of a policy adopted by members of the Bensalem Police Department to violate citizens' civil rights, and the Defendant officers knew they would not be disciplined for excessive force.

134.    All defendants conspired to violate Plaintiff's civil rights as set forth above.

135.    All defendants committed the necessary "overt acts," as set forth above, with the intention of depriving Plaintiff of her civil rights.

136.    As a direct and proximate result of all defendants' conspiracy to violate Plaintiff's civil rights, Plaintiff suffered the injuries set forth above.

WHEREFORE, Plaintiff, Angela George Austin, hereby demands judgment in her favor and against all defendants in an amount in excess of $150,000.00 for compensatory damages, punitive damages, attorney's fees, interest, fines and costs.

## COUNT III
### Failure to Prevent Conspiracy to Commit Civil Rights Violations
### 42 U.S.C. § 1983, et seq.
### Plaintiff v. All Defendants

137.    Plaintiff hereby incorporates paragraphs 1 through 135 as though set forth in full.

138.    All defendants failed to prevent a violation of Plaintiff's civil rights as per the allegations set forth above.

139.    All defendants had actual knowledge of members of the Bensalem Police Department's pattern and practice of using excessive force with impunity, as well as all defendants' conspiracy related thereto.

140.    Further, Defendants Bensalem Township, Cmorey and Harran had actual knowledge of their 'affirmative duty" to safeguard Plaintiff's civil rights while in the care and custody of members of the Bensalem Police Department.

141.    Despite having the power to prevent or aid in preventing the acts complained of herein, all defendants neglected and/or refused to do so.

142.    As a direct and proximate result of all defendants' failure and/or refusal to prevent the unlawful and outrageous conduct of members of the Bensalem Police Department, Plaintiff suffered the injuries set forth above.

WHEREFORE, Plaintiff, Angela George Austin, hereby demands judgment in her favor and against all defendants in an amount in excess of $150,000.00 for compensatory damages, punitive damages, attorney's fees, interest, fines and costs.

### COUNT IV
### Request for Attorneys' Fees
### Plaintiff v. All Defendants

143.    Plaintiff hereby incorporates paragraphs 1 through 141 as though set forth in full.

144.    Plaintiff has incurred, and will continue to incur, substantial attorneys' and expert fees while prosecuting this civil rights action.

145.    Plaintiff is entitled to a recovery of attorneys' fees and expert fees pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff, Angela George Austin, hereby demands judgment in her favor and against all defendants in an amount in excess of $150,000.00 for compensatory damages, punitive damages, attorney's fees, interest, fines and costs.

### COUNT V
### Battery
### Plaintiff v. Defendant Officers Karley and Jackson

146.    Plaintiff hereby incorporates paragraphs 1 through 144 as though set forth in full.

147.    Defendant Officers Karley and Jackson, acting within the course and scope of their duties as members and on behalf of the Bensalem Police Department and Defendant Bensalem Township, did intentionally, willfully and maliciously cause an offensive contact with Plaintiff's body, to wit, the violent twisting and manhandling of her while in handcuffs, which resulted in Plaintiff's right ankle breaking.

148.    As a result of this offensive contact, Plaintiff has suffered the injuries set forth above.

WHEREFORE, Plaintiff, Angela George Austin, hereby demands judgment in her favor and against all defendants in an amount in excess of $150,000.00 for compensatory damages, punitive damages, attorney's fees, interest, fines and costs.

### COUNT VI
### Intentional Infliction of Emotional Distress
### Plaintiff v. Defendant Officers and Defendant Detective Doe

149.    Plaintiff hereby incorporates paragraphs 1 through 147 as though set forth in full.

150.     Defendant officers and Defendant Detective Doe either directly participated in, or, with actual knowledge, acquiesced in, the violence that was visited upon Plaintiff, and the despicable and reckless disregard of her medical condition that resulted.

151.     Defendant Officer Clee dissuaded Plaintiff, despite her obviously desperate medical condition, from being transported to the hospital, as opposed to the Station House, with lies and deception.

152.     Defendant Officer Jackson called Plaintiff a "nigger," as did another unknown member of the Bensalem Police Department while at the Station House, and none of the other Defendant officers took any steps to prevent and/or remedy this vile treatment of Plaintiff.

153.     Defendant officers and Defendant Detective Doe allowed Plaintiff to sit outside of the Station House for hours, with a grossly swollen, broken ankle, which they caused, after having refused to provide her with any transportation.

154.     Defendant officers waited six months before they notified Plaintiff that she would, in fact, be charged with the marijuana discovered in the gym bag.

155.     The behavior outlined above, as to the Defendant officers and Defendant Detective Doe, was intentional and/or reckless.

156.     The behavior outlined above was extreme and outrageous.

157.     The behavior outlined above has caused severe emotional distress to Plaintiff in that she has unreasonable fears of the Defendant officers, depression, anxiety, sleep disturbances, and otherwise extreme mental anguish.

WHEREFORE, Plaintiff, Angela George Austin, hereby demands judgment in her favor and against all defendants in an amount in excess of $150,000.00 for compensatory damages, punitive damages, attorney's fees, interest, fines and costs.

JULIA MORROW ATTORNEY AT LAW, L.L.C.

_____

JULIA MORROW, ESQUIRE
Attorney for Plaintiff Angela George Austin

# EXHIBIT A